ROBINSON MERCANTILE CO. *v.* W. B. THOMPSON & CO.

1. PRINCIPAL AND AGENT. *Special agent. Authority.*

A special commission to buy cotton at a designated place from certain persons is not an agency to buy at a different place from others.

2. SAME. *Purchase. Equal quality and value.*

In such case it makes no difference that the cotton elsewhere purchased was of equal value and quality.

FROM the chancery court of Hinds county, second district.
HON. H. C. CONN, Chancellor.
The opinion states the facts.

*Brame & Alexander*, for appellants.

The limitation attempted to be imposed upon the authority of Reed, in this case, was unreasonable, and not in accordance with the law governing such cases. The defense relied upon

is not a meritorious one, and it was seized upon as an after-thought, merely to avoid the consequences growing out of a fall in the price of cotton. It was a pure afterthought to assert that the cotton sold was not of the quality contemplated, but was of inferior quality, raised on poor land, etc. If the price of cotton had gone up, Mr. Reed would have been compli-mented by the defendants for his prompt and intelligent execu-tion of orders and his success in securing a better lot of cotton than was ordered, with better freight rates, etc.

We presume little need be said in regard to the statute of frauds. "The statute only requires signing by the party to be bound; the other party confirms the contract by offering to perform or by bringing suit." *Marquese* v. *Caldwell*, 48 Miss., 23; *Peevy* v. *Haughton*, 72 *Ib.*, 918. But a broker is agent of both parties, where his character as such is known. 8 Am. & Eng. Enc. L., 720, note 10. Here it is undisputed that Reed was known to both parties as a broker or buyer. "Bro-kers or factors may sell in their own name, and the principal is bound as if his name were used." 3 Am. & Eng. Enc. L., 320, note 1; 63 Miss., 342.

The telegrams in this case, when construed together, consti-tute a complete contract in every respect.

Whether an agent is general or special, the principal is bound by acts of the agent within the authority given, and this in-cludes also whatever usually belongs to their performance. 1 Am. & Eng. Enc. L. (new ed.), 988, and notes; *Ib.*, 995, note 8; 94 Mich., 349.

But even if Reed is to be considered a special agent, and even if we have not properly construed the authority given him by the telegrams under the facts above stated, we call the at-tention of the court to the fact that, at the most, his instructions were ambiguous. It is not claimed that he did not act in good faith and use his best judgment. The defendants were cer-tainly negligent in not answering more specifically and sepa-rately his two telegrams, one of which referred to the Learned

cotton and the other to the Centerville cotton. Instead of answering these telegrams separately, appellees sent a message which, in any view of the case, was ambiguous and uncertain in its terms.

Even in the case of a special agent, if ambiguous instructions are given, the principal is bound by the agent's construction of them, if he acts in good faith. 1 Am. & Eng. Enc. L. (new ed.), 1001, (b) and notes; 91 N. Y., 185; 65 Iowa, 67.

In addition to what has been said, we submit that one cannot employ a broker or factor or auctioneer or the like and make him a special agent, even in respect to a single transaction. This is as old as the law of agency. 2 Am. & Eng. Enc. L. (old ed.), 577, and notes; 3 Ib., 445; 12 Am. Rep., 45.

*Wells & Croom*, for the appellees.

Reed was a special agent of Thompson & Co., to do a particular thing which he never did or attempted to do. He was directed to buy from Watson & Smith, at Learned, their cotton, not over three hundred bales, at eight and three-sixteenth cents per pound, if he could not buy it at a less price.

The principal of a special agent is only bound by the acts of the agent which are strictly in accordance with his authority, and a third party is bound, at his peril, to ascertain the limit of the authority of the agent. 6 How. (Miss.), 345; 12 Smed. & M., 398, 403, 405; 53 Md., 28; 41 Conn., 421; 10 Bush, 632; 11 Met., 5; 72 N. Y., 279; 6 Smed. & M., 367; 58 Iowa, 301; 62 Iowa, 91; 27 Ala., 612; 29 Me., 404; 1 Pet. (U. S.), 290; 53 Ind., 184; 100 Mass., 74; 30 Vt., 599; 82 Mich., 336; 92 Mo., 113; 11 Mich., 139; 63 Vt., 127; 61 Cal., 216; 78 Ill., 553; 63 Tex., 348; 4 Am. St. Rep., 72; 9 Ib., 147; 19 Ib., 625; 21 Ib., 567; 25 Ib., 748; Lawson's Rights, Remedies and Practice, vol. 1, chap. 8.

A special agency exists where the authority is to do a single act. A general agency exists where the authority is to do all acts in any particular trade or calling. A person who is au-

thorized by his principal to execute a particular deed, or to sign a particular contract, or to purchase a particular parcel of merchandise, is a special agent. One who is authorized to execute all deeds, sign all contracts or purchase all goods required in a particular trade, business or employment, is a general agent in that trade, business or employment. Story on Agency, sec. 17.

An authority to an agent to buy a single article of merchandise by one contract, or to buy several articles from a person named, is a special agency; while authority to make purchases from any person with whom the agent may choose to deal, or to make an indefinite number of purchases, not having in view a single transaction, but a number of separate transactions, constitutes a general agency. *Butler* v. *Maples*, 9 Wall., 766; 19 *Ib.*, 822; 22 How., 75; 16 *Ib.*, 253; 1 Pet., 264; 9 Pet., 607; Story on Agency, sec. 32; Lawson's Rights, Remedies and Practice, vol. 1, chap. 8, and numerous authorities there cited. Usage will never be allowed to take preference over express instructions. *Scott* v. *Rogers*, 31 N. Y., 676.

STOCKDALE, J., delivered the opinion of the court.

This cause was commenced by attachment in the chancery court of the second district of Hinds county, to recover from appellees, nonresidents, about one thousand dollars, damages for losses on three hundred bales of cotton sold by appellants, as they alleged, to appellees, who refused afterwards to receive and pay for same, thereby compelling appellants to sell on a reduced market at a less price. The testimony, which we have carefully examined, is voluminous, and has been elaborately and learnedly discussed by counsel in connection with the law of agency. D. W. Reed was a cotton buyer for E. Johnson & Co., of Jackson, Miss., but had leave to buy for other people when his company was not in the market. He had applied to appellees to represent them, and they had declined to employ him. Some time afterwards, on the seventeenth of October,

1895, appellees telegraphed Mr. Reed, at Utica, Miss., authorizing him to buy Utica and Learned cotton—not more than three hundred bales—at eight and three-fourth cents per pound; and if he could not get it at that, give eight and thirteen-sixteenths.    That telegram is in the following language:

"NEW ORLEANS, LA., October 17, 1895.
"*To D. W. Reed, Utica, Miss.:*

"Try three-fourths; accept at thirteen-sixteenths; buy Watson & Smith, Learned; offered Smith three-fourths; not over three hundred; answer."

Mr. Reed, finding he could not get more than one hundred bales at Utica and Learned, and wanting to buy and make commissions on three hundred bales, telegraphed to E. T. Stackhouse, at Centerville, Miss., another agent of E. S. Johnson & Co., to buy three hundred bales there; and, upon Stackhouse's reply, Reed telegraphed appellees that he had purchased three hundred bales at Centerville.    Immediately upon receipt of that telegram appellees replied as follows:

"NEW ORLEANS, LA., October 17, 1895.
"*To D. W. Reed, Utica, Miss.:*

"Cannot use Centerville cotton; authorized purchase only at Utica and Learned; have written."

This all occurred on October 17, 1895.    Reed, having left Utica, did not get the last telegram until 8:30 on October 18, but went on to Centerville, and appellees repeated their telegram of the day before, that Reed had no authority to buy anywhere except at Utica and Learned.    Appellants did not know Mr. Reed; never had seen him; did not know that the purchase was intended for appellees until the eighteenth, and then also learned that appellees denied Reed's authority to buy it and declined to take it.    Appellees were not regular cotton buyers, but commission merchants, and bought cotton to keep

in touch with their customers and keep their business.   Reed
was not their agent;  had a special authority in this instance to
buy cotton at Utica and Learned, and especially from Watson
& Smith.   He had never been held out as an agent by appel-
lees, and they did not ratify his act, but promptly repudiated
it.   A special commission to buy certain property at a certain
place, from men named, cánnot be construed into an agency to
buy at another and different locality, from other people, even
if the property was of equal quality and value.   Appellants
had no dealings with appellees, and Reed was not their author-
ized agent in the transaction, and they are not liable.

*The decree of the court below is affirmed.*